IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Cr. No. 19-CR-3113-JB |
| AMANDA SILVA, | ) ) ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO
DEFENDANT AMANDA SILVA'S APPEAL OF DETENTION ORDER**

The United States of America, by and through its undersigned counsel, respectfully submits its response to the defendant's Appeal of Detention Order (Doc. 221). The United States asks the Court to deny the appeal because the defendant has proven through her own actions that is no condition or combination of conditions the Court could fashion to ensure her appearance and the safety of the community.

**Factual Background**

On September 11, 2019, a federal grand jury in Albuquerque, New Mexico charged the defendant with Conspiracy and Distribution of Controlled Substances in violation of 21 U.S.C. §§ 846 and 841. *See* Doc. 2 (Counts 1 and 14). On September 19, 2019, federal agents arrested the defendant in Las Vegas, New Mexico. FBI agents conducting a search of her residences discovered a large cache of weapons, many of which Ms. Silva apparently claimed were hers. According to agents, Ms. Silva was belligerent, noncompliant, and verbally abusive towards law enforcement officers. Special measure had to be employed to safely place Ms. Silva into custody.

That same day, Ms. Silva appeared before the Honorable Karen B. Molzen, United States Magistrate Judge, for her initial appearance. In court, Ms. Silva appeared to be intoxicated, as she was smiling inappropriately, appeared off balance, and was slurring her words to the Court.

On September 23, 2019, Pretrial Services Officer Daniel Stewart attempted to interview the defendant, but was unable to complete that interview due to the defendant's belligerence and disrespect. Two days later, at the defendant's first detention hearing, Judge Karen B. Molzen reviewed of the required balancing factors under 18 U.S.C. § 3142 and held that the defendant was a flight risk and danger to the community. *See* Doc. 94.

In response to a motion from the defendant, on November 5, 2019, Judge Molzen again held a hearing to determine if she should impose lesser restrictive means than detention. *See* Doc. 129. Over the objection of the United States and Pretrial Services[1], Judge Molzen granted the defendant's release to La Pasada halfway house. Multiple times throughout the hearing, Judge Molzen made clear that she would have "zero tolerance" for the defendant breaking any of the conditions of release. Hrng Tr.19,24 Nov 5, 2019 .[2]

Ultimately the defendant chose her own desires over the rules Judge Molzen imposed on her. She violated La Pasada's rules, and was remanded into custody. Docs. 188, 195.

On June 19, 2020, defendant filed the instant motion appealing her detention and seeking to be placed in third-party custody.

## **Relevant Law**

The reconsideration of a Magistrate Judge's release order reviewed *de novo* by the

---

[1] The defendant here failed to obtain or state the position of Pretrial Services prior to filing her motion, in violation of Local Rule 47.3.
[2] The transcript of the November 5, 2019 hearing is appended to this Response as Attachment 1.

District Court having original jurisdiction in the case. *United States v. Cisneros,* 328 F.3d 610, 615-616 (10th Cir. 2003).

Pursuant to the Bail Reform Act of 1984, a defendant may be detained pending trial only if, after a hearing, a judicial officer finds that "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The United States bears the burden of proving risk of flight by a preponderance of the evidence and dangerousness to any other person or to the community by clear and convincing evidence. However, because of the charges arising from the present indictment, there is a presumption under the Bail Reform Act that no condition or combination of conditions will reasonably assure the appearance of a defendant and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

Once the statutory presumption is invoked, the burden of production shifts to the defendant. *See United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). The defendant's burden of production is not heavy, but some evidence must be produced. *United States v. Villapudua-Quintero*, 308 F. App'x 272, 273 (10th Cir. 2009), *citing Stricklin*, 932 F.2d at 1355.

If a defendant meets the burden of production, the presumption remains a factor for consideration in determining whether to detain a defendant. *See Stricklin*, 932 F.2d at 1354-55; *United States v. Hare*, 873 F.2d 796, 798-799 (5th Cir. 1989) ("[P]resumption is not a mere 'bursting bubble' that totally disappears from the judge's consideration after the defendant comes forward.

## **Argument**

*The Presumption has not been rebutted*

This court reviews the findings of the Magistrate Judge below *de novo*. Although that Judge found that defense had adequately rebutted the presumption, this court is not bound by that ruling, and should reject it. Although the defense does not have a high bar to clear in rebutting the presumption, it must present *some* evidence. *See Stricklin* at 1355. The defendant's assertions in her motion are simply that: bare assertions. The defendant initially refused to be interviewed by Pretrial Services, thus foreclosing an early opportunity to verify her stories of employment or the amount of support she actually provides to her children. It took three attempts at interviews for Pretrial Services to glean sufficient information it needed from the defendant. The Court should absolutely weigh the defendant's repeated lack of candor in its calculation.

*Every 3142(g) Factor Militates Against Release*

Regardless of if the defendant has rebutted the presumption, each of the 3142(g) factors is against her.

Nature and Circumstances of the Offense: When Congress declared that courts should weigh this factor, they specifically enumerated certain offenses that would weigh more heavily in favor of detention. Among these were whether the offense involved a controlled substance or a firearm. *See* 18 U.S.C. 3142(g)(1). The defendant is charged with trafficking controlled substance and, though it is not part of an indictment at this time, was in possession of several firearms at the time of her arrest.

Weight of the Evidence: The United States brings formidable evidence in this case. Law enforcement agents surveilled the defendant on-scene during a drug deal that was recorded and from which the narcotics were obtained, tested, and confirmed to be cocaine. Further, despite her claims to have been a minor "if at all" actor in the narcotrafficking of Robert Padilla, Doc 221, Title III intercepts captured her discussions directly with Mr. Padilla. These

conversations pertained to the sale of illegal narcotics. The defendant discussed not only Robert Padilla, the leader of the organization, suppling her, but also her suppling others individuals downstream from her.

## History and Characteristics:

The rosy image painted in defendant's motion belies the stark reality of her conduct. At the time of her arrest, the defendant was combative with law enforcement to the point she needed to be forcibly restrained. The defendant points to the length of time since her last conviction as evidence that he she is law-abiding, while glossing over her numerous violations during the pendency of that case, as well as her several narcotics-related arrests since. While this court reviews *de novo* the arguments for and against the defendant's release, it should not don blinders to the actions she has taken since the lower court's ruling. Ordered to follow the rules of La Passada, she chose to engage in inappropriate conduct with another resident. Not some brief flirtatious conversation, but physical contact vigorous enough to leave marks. Hrng Tr. 9 Mar 12, 2020.[3] Beyond this admitted violation, she has failed in other ways. The lower court ordered the defendant to actively seek employment. (Doc. 133 at ¶ (7)(b)). However, despite being referred to two different job developers at La Pasada Halfway House, she "displayed little effort to obtain employment." Doc 225. She was given numerous opportunities to succeed, only to squander them.

Additionally concerning are the ways in which her arguments contradict the Pretrial Services report. The defendant says that if only the court were to release her, she would find gainful work at her previous employer. *See* Doc. 221 at 3. But Pretrial Services verified that

---

[3] The transcript of the March 12, 2020 hearing is appended to this Response as Attachment 2.

she is not eligible to return to work there.  *See* Doc. 225.  It seems that the defendant and her ex(?) husband are not even on the same page when it comes to their own legal status.  She thinks they are actually divorced.  He says that they split due to infidelity, but are still married.  The defendant was found living in the home of another man, a charged coconspirator, at the time of her arrest, and was evicted from La Passada for amorous behavior in violation of the house rules.  This does not bode well for her going forward in a placement with an estranged romantic partner.

       Nature and Seriousness of Danger to Persons or Community: The defendant's history in combination with her charged criminality here, show that she represents a danger to the community.  The defendant sells narcotics directly for Robert Padilla, the violent leader of his drug trafficking organization.  At the time of her arrest, she was combative with law enforcement and in possession of numerous firearms.  Until she was presented with the stark situation in front of her, her attitude indicative of someone with disrespect for rules and authority.

       WHEREFORE, for the foregoing reasons, and any additional reasons that may be presented at the upcoming hearing on this matter, the United States requests that the Court DENY the defendant's appeal of the detention order.

                                            Respectfully submitted,

                                            JOHN C. ANDERSON
                                            United States Attorney

                                            ***Electronically signed***
                                            ROBERT I. GOLDARIS
                                            Assistant United States Attorney
                                            P.O. Box 607
                                            Albuquerque, NM 87103
                                            (505) 346-7274

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 6, 2020, I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

      */s/*
Robert I. Goldaris
Assistant United States Attorney