```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW MEXICO
                       ALBUQUERQUE DIVISION


UNITED STATES OF AMERICA,    )  CASE NO:  1:19-CR-03113-JB-9
                             )
      Plaintiff,             )          CRIMINAL
                             )
      vs.                    )     Albuquerque, New Mexico
                             )
AMANDA SILVA,                )     Tuesday, November 5, 2019
                             )    (11:07 a.m. to 11:16 a.m.)
              Defendant.     )    ( 4:01 p.m. to  4:26 p.m.)
```

                         MOTION HEARING

             BEFORE THE HONORABLE KAREN B. MOLZEN,
                UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>

For Plaintiff:           KRISTOPHER HOUGHTON, ESQ.
                         U.S. Attorney's Office
                         District of New Mexico
                         P.O. Box 607
                         Albuquerque, NM 87103

For Defendant:           CHARLES N. FISHER, ESQ.
                         105 Bryn Mawr Dr. SE
                         Albuquerque, NM 87106

Court Reporter:          Recorded; ABQ-Rio Grande

Clerk:                   K. Hernandez de Sepulveda

U.S. Pretrial/Probation: Daniel Stewart

Transcribed By:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1    **Albuquerque, New Mexico; Tuesday, November 5, 2019; 11:07 a.m.**

2                         **(Call to Order)**

3            **THE COURT:**  All right.  We're now here in *United*

4    *States of America versus Amanda Silva* in Cause Number

5    19-CR-3113-JB.  We're here on an opposed motion to set

6    conditions of release for Defendant Amanda Silva.

7            **MR. HOUGHTON:**  Good morning, your Honor, Kristopher

8    Houghton on behalf of the United States.

9            **THE COURT:**  Thank you.

10           **MR. FISHER:**  Your Honor, Charles Fisher on behalf of

11   Amanda Silva.

12           **THE COURT:**  All right.  Well, I have had an

13   opportunity to read the motion and the response.  The response

14   raises a few good questions for me because --

15           **MR. FISHER:**  Yes.

16           **THE COURT:**  -- what statute are you under?

17           **MR. FISHER:**  Your --

18           **THE COURT:**  As far -- what -- you're asking for

19   reconsideration.  Is that --

20           **MR. FISHER:**  I am asking for reconsideration and,

21   your Honor, what we would like to do, if we may, is I would

22   like to have her re-interviewed again by Mr. Stewart so that

23   she can hopefully -- I know she was uncooperative on the last

24   occasion and I fully accept that.  But I -- at the moment, we

25   would like to have her re-interviewed again so that she can

1    hopefully be far more cooperative than she was on the previous

2    interview.

3              THE COURT:  Well, what kind of guarantees do I have?

4    Because I don't want to waste Mr. Stewart's time.

5              MR. FISHER:  No.  And I already -- that's why I would

6    like very much to have her re-interviewed again so that she can

7    make a case for herself to actually be released from custody,

8    your Honor.  And that's what we would like to do.

9              THE COURT:  All right.  Mr. Houghton, I have read

10   your response and it does raise some significant issues as far

11   as my authority to grant you the relief you're asking for.

12             MR. FISHER:  Certainly.

13             THE COURT:  And I understand your dilemma.  This is

14   also a concern for me, however, is that this case has been

15   declared complex which means to me that it's going to be a

16   protracted time more than likely before this case gets to a

17   trial.

18             MR. FISHER:  Yes.

19             THE COURT:  I think we have a conspiracy count

20   against Ms. Silva.

21             MR. FISHER:  One conspiracy count, your Honor, and

22   one possession with intent to supply.

23             THE COURT:  And it's a -- is it a --

24             MR. FISHER:  A C violation.

25             THE COURT:  It is a C level violation?

1          **MR. FISHER:**  Yes.

2          **MR. HOUGHTON:**  Both are C level, your Honor, and I --

3    if the motion simply asked for leave or a request of the Court

4    to have her re-interviewed, I don't think I would have taken a

5    position at all because I think that's within the Court's

6    discretion to allow somebody to be interviewed by Probation if

7    they want to be interviewed.

8          But the motion asks for her to be released to a third

9    party and so that's why I responded the way I did --

10         **THE COURT:**  Okay.

11         **MR. HOUGHTON:**  -- because I think, one, there's

12   little help for the Court or for the United States with respect

13   to what statute are we under that grants us this review.  And I

14   think that's really the larger question I was getting at which

15   is under 3142.  The Movant has to base it on new information

16   that was unavailable or unknown to the Movant at the time of

17   the initial detention hearing and order.  And there are no

18   facts, at least in the motion, that are new to the Movant.  I

19   don't know whether there are facts that will be given now to

20   the interviewer that were not available to the Movant.  It's

21   possible.

22         So if the request is simply to have her

23   re-interviewed, the United States leaves that up to the

24   discretion of the Court and I think then at that point, if

25   facts develop that seem to support either reconsideration under

5

1   3142 or an appeal under 3145 that the Defense can then line

2   those out for the Court and ask in a motion for either relief.

3            **THE COURT:**  Okay.

4            **MR. HOUGHTON:**  And then I would have an opportunity

5   to actually respond intelligently to help the Court in its

6   analysis.

7            **THE COURT:**  I'm looking at you, Ms. Silva, because

8   I'm not going to waste Mr. Stewart's time.  If you're

9   cooperative -- if you're going to be disrespectful, tell me now

10  because I'm not going to waste his time.  I'm not going to

11  waste my time.  I'm not going to waste Mr. Fisher's time,

12  Mr. Houghton's time.

13           You're in serious trouble and one reason I'm inclined

14  to grant you the opportunity to have this interview is because

15  sometimes people are scared and when they're faced with really

16  understanding what serious trouble they're in, they figure out

17  that the only way they're going to help themselves is to be

18  cooperative.

19           I get lots of people who will come in here who have

20  significant criminal histories with felony convictions and they

21  know how the system works.  They are generally the most polite

22  people you're going to meet and ones who will say "your Honor"

23  in every sentence that they talk to me because they know how

24  the system works.

25           I looked at your record and I didn't see any felony

1    convictions.  So I'm thinking that maybe you didn't understand

2    at that time the trouble that you were in and what it's going

3    to take to cooperate with Mr. Stewart.  Are you willing to do

4    that?

5              **THE DEFENDANT:**  Yes, your Honor.

6              **THE COURT:**  You will treat him with respect.  You

7    will treat me with respect.  You will treat your counsel with

8    respect at all times.

9              **THE DEFENDANT:**  Yes, your Honor.

10             **THE COURT:**  If you can't do that, then there's no way

11   I can release you.  Do you understand that?

12             **THE DEFENDANT:**  Yes, your Honor.

13             **THE COURT:**  Now, that's not a promise to release you.

14   All I'm going to do is I'm going to see how cooperative you are

15   and what information he can gather to better inform me.  So I'm

16   going to have you be interviewed today.

17             Are you willing to do that, Mr. Stewart?

18             **U.S. PRETRIAL SERVICES OFFICER STEWART:**  I am, your

19   Honor.

20             **THE COURT:**  Okay.  I'm trying to decide when we could

21   hold this hearing.

22             How much time do you need, Mr. Stewart?  Well, I

23   guess it's going to depend upon the information she gives you.

24             **U.S. PRETRIAL SERVICES OFFICER STEWART:**  That's

25   correct, your Honor.  I don't know if the Court's inclined to

1  have the hearing this afternoon.  I have the criminal history

2  already computed.  If we're able to do an interview, I guess it

3  depends if there's potential third parties.  We may or may not

4  be able to get that but if I'm able to get the information, I

5  could probably file the report today.  I am going to be out of

6  town tomorrow and the following day but someone could stand in

7  for me in court and report the findings if the hearing is in

8  the next couple of days.

9          **THE COURT:**  Would it be possible for you to give me

10  an oral hearing today if you get all the information?

11          **U.S. PRETRIAL SERVICES OFFICER STEWART:**  It would be

12  possible, your Honor, yes.

13          **THE COURT:**  Okay.  Because I would prefer to have you

14  here for that hearing.

15           **U.S. PRETRIAL SERVICES OFFICER STEWART:**  Yes, your

16  Honor.

17          **THE COURT:**  Why don't we aim for 4:00 o'clock?  Would

18  that work?

19          **MR. FISHER:**  Yes.

20          **THE COURT:**  How about for you, Mr. Houghton?

21          **MR. HOUGHTON:**  I think so, your Honor.  If you could

22  just give me a moment to check --

23          **THE COURT:**  Sure.

24          **MR. HOUGHTON:**  -- my schedule.  I'll be here, your

25  Honor.

1          **THE COURT:**  All right.  If we get all the information

2  we need, get the verification, we'll see you back here at 4:00

3  o'clock.

4          Anything else, Mr. Houghton?

5          **MR. HOUGHTON:**  No, your Honor, thank you.

6          **THE COURT:**  Mr. Fisher?

7          **MR. FISHER:**  Your Honor, I will participate, too,

8  with --

9          **THE COURT:**  Remind her if she needs a reminder.  All

10  right.

11          We'll be in recess.

12      **(A recess is taken from 11:16 a.m. to 4:01 p.m.)**

13          **THE COURT:**  We're back in court now on *United States*

14  *of America versus Amanda Silva* and that's in Cause Number

15  19-CR-3113 JB.  Counsel, if you'd please enter your appearance.

16          **MR. HOUGHTON:**  Good afternoon, your Honor, Kristopher

17  Houghton on behalf of the United States.

18          **THE COURT:**  Thank you.

19          **MR. FISHER:**  Good afternoon, your Honor, Charles

20  Fisher on behalf of Amanda Silva.

21          **THE COURT:**  Very good.

22          I just received the new bond report that was prepared

23  by Mr. Stewart.  And he does still continue to believe that she

24  should remain in custody until the time of trial.

25          Mr. Fisher?

1          **MR. FISHER:**  Your Honor, I have spent considerable

2  time with my client and as a result of that, she -- I -- what

3  we would ask to have happen would be to have her released to

4  the third-party custody of her mother.  Your Honor, she has --

5  there is very little criminal history at the moment.  And I

6  know this is a complex case and I know that this is one we are

7  probably going to spend a considerable amount of time reviewing

8  all of the discovery.

9          But under the circumstances, I would certainly ask

10  the Court to consider releasing her to the third-party custody

11  of her mother.  She is not, I think -- from my perspective, I

12  don't think she is actually a danger to the community at all

13  and I would be -- I would certainly appreciate it if the Court

14  would consider the idea of releasing her to the third-party

15  custody of her mother with all the conditions that need to be

16  applied for that purpose.

17          **THE COURT:**  Okay.  Did -- going to Mr. Houghton's

18  argument in his motion --

19          **MR. FISHER:**  Yes, your Honor.

20          **THE COURT:**  -- can you identify for me what would be

21  new that was not known by Ms. Silva at the time of the first

22  interview?

23          **MR. FISHER:**  Your Honor, she, I know, was very

24  uncooperative with the first interview.  She has -- since that

25  time has been completely cooperative with the interview that

1    was conducted by Mr. Stewart and in the context of that, we

2    would urge the Court to consider the idea of releasing her to

3    the third-party custody of her mother so that she could

4    actually be with her children and spend time with them.

5           And also under the circumstances, what we would like

6    to have happen would be to actually have her released to the

7    third-party custody of her mother and also she will comply with

8    any conditions that are set for her for -- in order to be able

9    to have time with her family, have time working, have time with

10   any form -- she will submit to any drug tests that she needs to

11   submit to.  And that's what I would ask the Court to consider.

12          **THE COURT:**  All right.  Mr. Houghton?

13          **MR. HOUGHTON:**  Your Honor, I think the answer there

14   to your question is that there is no information that's new

15   that was unknown to the Movant at the time of the original

16   detention hearing.

17          **THE COURT:**  What about -- at least from my

18   perspective, I now have a verifiable, appropriate third-party

19   custodian who does not reside in Las Vegas.  To me, that is

20   some new information.  So I am going to go on ahead and

21   consider this.

22          **MR. HOUGHTON:**  And the only thing I have to say about

23   that, your Honor, is I think if you look at the Statutory Text

24   3142(f) that I cited in the brief, it's not -- what's required

25   is not information that's new to the Court.  What's required is

1  information that was not known to the Movant at the time of the

2  detention hearing.  So it's more narrow than that and I think

3  that's the express text of 3142(f) that the *Cisneros* case

4  cites.

5          THE COURT:  Well, she just moved -- it says here that

6  she's only resided in Santa Rosa, New Mexico for five days.  I

7  know a big concern of mine at the time I even looked at her

8  first report was I was not interested in anything in Las Vegas

9  for Ms. Silva.  I don't think that's where she should be at

10  this point.  So I understand your argument, Mr. Houghton.

11          MR. HOUGHTON:  Sure.  The other requirement of the

12  information, if the Court views it as information unknown to

13  the Movant at the time, the fact that five days ago her mother

14  moved to Santa Rosa is that the information must be material.

15  And I hear what the Court's saying that one of the Court's

16  primary concerns was a release back to Las Vegas.  So if I

17  could turn to the merits --

18          THE COURT:  Yes, sir.

19          MR. HOUGHTON:  -- I would like to tell the Court what

20  I think on detention.

21          THE COURT:  Can you remind me of a few things

22  though --

23          MR. HOUGHTON:  Sure.

24          THE COURT:  -- about the previous hearing?  As I

25  recall, there was -- I had some concerns because there were

1   firearms that were located in the home when she was arrested.

2   Is that right?

3           **MR. HOUGHTON:**  That's correct, your Honor.  There

4   were firearms.

5           **THE COURT:**  How many firearms were there?

6           **MR. HOUGHTON:**  I don't have the exact number but it

7   was quite a few firearms as I understand it and Ms. Silva told

8   the agents that in addition to those firearms, the firearms

9   that were located at Luis Sanchez's house where she was

10  arrested, she claimed all those firearms as well.  And so with

11  the answer to that, I'd like to turn back which I think is the

12  Court's first question.  Is the rebuttable presumption in play?

13  It is.  This is a drug crime with -- that carries a penalty of

14  over ten years.

15          And so the presumption is that no conditions will

16  reasonably assure the appearance of the Defendant or the safety

17  of the community.  Even if the Court finds that some evidence

18  is presented -- has been presented to overcome the presumption,

19  the Court knows that it remains a factor.  So that's the

20  starting point.

21          I disagree with Mr. Fisher about the complete lack of

22  criminal history.  There is criminal history that goes back

23  quite a ways, including trafficking controlled substances.  So

24  this is something that -- this is a game that Ms. Silva has

25  participated in for quite some time.  The first, which is a

1    juvenile case, is 2002, trafficking controlled substances, to

2    wit, crack cocaine.

3            If the Court recalls the affidavit that was presented

4    in this case and also the record at the previous detention

5    hearings, the controlled substance Ms. Silva has been charged

6    with is cocaine.  And so it's -- that behavior has not stopped

7    since 2002.  This has been a continuing theme for Ms. Silva and

8    her involvement with trafficking controlled substances.

9            **THE COURT:**  Well, now I see -- I do see the 2002

10   juvenile whatever you'd call it case.  I -- the second one I

11   see was 2011, trafficking a controlled substance but --

12           **MR. HOUGHTON:**  Which was dismissed.

13           **MR. FISHER:**  It was dismissed.

14           **MR. HOUGHTON:**  The 2013 one, possession of a

15   controlled substance, also dismissed and then there is a 2016

16   battery on a household member and criminal damage to property

17   that did result in a guilty plea and then the latest permitting

18   an unauthorized minor to drive.

19           What I can tell the Court by proffer is that

20   Ms. Silva was intercepted speaking with Robert Padilla over

21   Robert Padilla's line and it was clear that Ms. Silva was a

22   distributor.  It was clear based on those communications that

23   it was multi-substances but including cocaine.  There was a

24   call in which they discussed supplying her and her supplying

25   other people presumably in the Las Vegas area and there was

1  also a call where she was making preparations for a party at

2  which Mr. Padilla was going to be at in Las Vegas.

3          All of that is to say that this isn't a case that the

4  Court sometimes sees where someone is down on their luck and

5  they agree to transport some controlled substances.  It's

6  abhorrent behavior.  This is purposeful behavior over a period

7  of time.

8          **THE COURT:**  What did -- that call that was recorded,

9  when was that?  I mean just rough --

10          **MR. HOUGHTON:**  I believe it was November of 2018,

11  your Honor.  And then there was a buy which is Count Fourteen

12  that's charged against Ms. Silva that occurred sometime in the

13  spring at which she was an occupant in the vehicle and a

14  participant in that deal with Mr. Padilla that law enforcement

15  documented both by recording -- audio recording as well as

16  surveillance and then later obtained the substance from the

17  person who purchased from them and tested the substance and it

18  was cocaine.

19          **THE COURT:**  Was it a controlled buy?

20          **MR. HOUGHTON:**  Yes, your Honor, it was a controlled

21  buy.

22          And so all of that is to say that --

23          **THE COURT:**  Well, that is weight of evidence, a

24  different --

25          **MR. HOUGHTON:**  All of that goes to the weight of the

1   evidence, your Honor, and also underscores that this is not

2   abhorrent behavior, that this is someone who has been engaged

3   in criminal behavior for a long time.

4          If the Court notices on the Probation officer's

5   report, there's a discussion about Jeremy Vasquez.  The Court

6   may recall from an affidavit that Bryan Acee presented to the

7   Court a discussion of some of the murders that happened in Las

8   Vegas this last summer, one of which was Mr. Vasquez.

9   Ms. Silva was, I believe, according the Probation officer's

10  report, Mr. Vasquez's wife at the time.

11         And in addition to having a relationship with a

12  person who's been identified as an SNM member and being in

13  those sort of volatile circumstances, there's also evidence

14  that she was in a romantic relationship with Luis Sanchez who

15  the Court also knows is a Co-defendant in this case.  His

16  nickname is Paeoso (phonetic).  Ms. Silva was arrested outside

17  of his residence where this trove of guns were found but the

18  Court may recall about Mr. Sanchez being involved in a shooting

19  this summer as well as being intercepted over Mr. Padilla's

20  wiretapped phone.

21         All of that is to say that Ms. Silva appears to be

22  making decisions about the people she's involving in her life

23  and to be involved in these volatile situations, I think, which

24  is underscored by these times of her brushes with the law but

25  also the case that we've charged here which I think is really

1  at the heart of what the Probation officer and the United

2  States is concerned about if Ms. Silva is released, is that

3  she's just going to return back to this life that she's been

4  leading for some time.

5       **THE COURT:**  I think that was part of my consideration

6  in not wanting her to go back to Las Vegas definitely with

7  the loss of her husband and everything else and those

8  relationships.  I mean, one of the -- if I were to release her,

9  one of the conditions would be no contact at all directly or

10 indirectly.  I've already had to revoke conditions on one

11 person because they violated that condition.

12      I'm torn in this case.  I am, in part because this is

13 different from anything she's ever faced in her life.  She's

14 now in Federal court and she's finding out it's a whole lot

15 different than State court.  The penalties are much more

16 significant.

17      **MR. HOUGHTON:**  Yes, your Honor.

18      **THE COURT:**  I do take into account the weight of the

19 evidence and I have concerns.  When you start talking about all

20 those guns out there that she'd have to absolutely understand,

21 no weapons --

22      **MR. HOUGHTON:**  Yes, your Honor.

23      **THE COURT:**  -- at all.

24      Mr. Stewart, how -- in your discussions today, was

25 she respectful towards you?

1      **U.S. PRETRIAL SERVICES OFFICER STEWART:**  Your Honor,

2  she was completely respectful.

3      **THE COURT:**  All right.  Did you find her willing to

4  provide you with the information that you requested?

5      **U.S. PRETRIAL SERVICES OFFICER STEWART:**  I did, your

6  Honor.

7      **THE COURT:**  I'm hoping that this is the wake-up call

8  for her.  My concern is that I do think this case is going to

9  be protracted.

10     **MR. FISHER:**  Absolutely, it is.

11     **THE COURT:**  I don't see any felony convictions.

12     **MR. FISHER:**  No, your Honor, no felony convictions.

13     **THE COURT:**  You haven't yet checked out the mom's

14  home, have you?

15     **U.S. PRETRIAL SERVICES OFFICER STEWART:**  Your Honor,

16  we haven't.  I did speak with her.  I got a brief rundown.

17  She's new to that area.  It sounded like an apartment.  The

18  youngest child is also living there with her.  That's about as

19  much information as I did get.  We would recommend that if the

20  Court would be looking to consider this residence as the

21  release residence that we allow the Santa Fe office the

22  opportunity to check the residence and make sure it's suitable.

23  But we did find the mother, in the event that the Court orders

24  her to be, would be a suitable third party.

25     **THE COURT:**  Okay.  What about -- is there a waiting

1    list -- this is what I'm going to ask.  Is there a waiting list

2    at the halfway house at this point?

3           **U.S. PRETRIAL SERVICES OFFICER STEWART:**  Currently --

4    I believe the most current information is she would be the next

5    person in line to go to the halfway house.  So they're

6    currently at full capacity but as soon as one female leaves,

7    there would be a space there.

8           **THE COURT:**  This is what I'm thinking right now and

9    it's not written in stone, is placing her at the halfway house

10   to give you the opportunity to make sure the home is there.

11          Ms. Silva, I'm looking at you and hoping that this is

12   your wake-up call.  When I set a condition for you, I'm doing

13   it because there is a presumption that there are no conditions.

14   I'm trying to find conditions that will make it so I feel

15   confident you're not going to violate any of them and that if

16   you keep in compliance with them, you're going to come back to

17   all future court proceedings and that you're going to walk the

18   line and not be dangerous to the community at all, that you're

19   not going to use drugs, that you're not going to sell drugs,

20   that you're not going to be in any way involved with firearms

21   or dangerous weapons, that you're going to stay away from gang

22   members, that you're not going to have any contact at all,

23   directly or indirectly, with any of your Co-defendants, anyone

24   who could be a witness in this case.

25          Do you understand that?

1          **THE DEFENDANT:**  Yes, your Honor.

2          **THE COURT:**  And because of your change in attitude,

3   I'm hoping that's the case.

4          What I'm thinking, Mr., Houghton, is placing her at

5   the halfway house, getting it all checked out and upon

6   verification by Mr. Stewart -- and this is hard for me because

7   Mr. Stewart is an excellent Supervising Pretrial Services

8   officer and he's recommended to me that you be placed in jail.

9          I want to give her an opportunity to show me that she

10  can abide by these conditions.

11         Mr. Stewart, that means I'm going to depend upon you.

12  I'm going to put zero tolerance, absolutely zero tolerance.

13         And Mr. Fisher will tell you, when I say "zero

14  tolerance," I mean zero tolerance.

15         **MR. FISHER:**  Yes, ma'am.

16         **THE COURT:**  So don't go saying -- and using drugs.

17  Don't go violating anything.

18         I'm -- Mr. Houghton, any -- I thought I'd lay out

19  some conditions and then if you are going to appeal, you'll

20  know.  You probably would have to check though.

21         **MR. HOUGHTON:**  Yes.  And it occurs to me -- I mean, I

22  would just like the opportunity to go and discuss it with my

23  supervisor and see if --

24         **THE COURT:**  And --

25         **MR. HOUGHTON:**  -- you know, what the position of the

1   office is on appeal but it does occur to me if the Court does

2   want to impose these conditions that it does make sense to kind

3   of graduate her down to release to a third party, that the

4   mother has been at this address for just five days and it makes

5   -- and it's pretty far away from a Probation office.  And so --

6         **THE COURT:**  Santa Rosa is not -- how far is Santa

7   Rosa?  I think it's like an hour.  Is it?

8         **MR. FISHER:**  Yeah.

9         **U.S. PRETRIAL SERVICES OFFICER STEWART:**  It's

10  actually -- it's supervised by the Santa Fe office because it's

11  geographically it's actually closer.

12        **THE COURT:**  Yeah, I guess that's --

13        **U.S. PRETRIAL SERVICES OFFICER STEWART:**  It's about

14  -- by the time you drive it, it's about an hour and 40 minutes.

15        **THE COURT:**  Oh, that is pretty far.  All right.

16        **U.S. PRETRIAL SERVICES OFFICER STEWART:**  So treatment

17  and testing is a little bit of an issue.  Moriarty is generally

18  where folks will have to drive to.  So transportation will be a

19  necessity to get back and forth.  There are some logistical

20  issues with that area but it would be the Santa Fe office.

21        **THE COURT:**  This is what I'm planning on, is although

22  I find you to be a flight risk and a danger, I do believe that

23  these conditions will be appropriate right now to address my

24  concerns.  I would place her at the halfway house.  You would

25  be required to follow -- in fact, I'm going to do that.  I'm

1  going to --

2     **(Audio sound heard in courtroom)**

3        **THE COURT:**  That's a strange sound.

4        Okay.  I'm going to place you at the halfway house

5  and you're to follow all of their program rules and directions

6  to you respectfully.  That's one of the rules over there and

7  I've had people with attitudes be revoked within a day because

8  they don't put up with that stuff.  So I'm going to place you

9  there.  That's where you're to reside until further order of

10  the Court.

11        You are not to be in possession of a firearm or any

12  other dangerous weapon.  I'm going to require you to have no

13  contact at all, directly or through someone else, with any

14  Co-defendant or witness in this case or any gang member.  Do

15  you understand that?

16        **THE DEFENDANT:**  Yes, your Honor.

17        **THE COURT:**  Okay.  Your travel is restricted to

18  Bernalillo County.  You're going to be subject to random drug

19  and alcohol testing and treatment in the discretion of Pretrial

20  Services.  I'm also going to authorize an evaluation for

21  substance abuse and whether or not treatment should be

22  required.

23        Do you have a passport?

24        **THE DEFENDANT:**  No, your Honor.

25        **THE COURT:**  Okay.  You're not to try and get a new

1  one or a visa or anything like that during the pendency of

2  these proceedings.

3          I don't contemplate this being long-term but I think

4  that it might be good for you to get a job or some kind of

5  education and I think that is required over at the halfway

6  house.  Is that right, Mr. Stewart?

7          **U.S. PRETRIAL SERVICES OFFICER STEWART:**  They

8  generally like folks to work in that direction, your Honor,

9  either community service, employment or something along those

10 lines.

11         **THE COURT:**  Something to keep you occupied and to

12 show you what's important.  Okay.

13         I'm trying to remember my other list.  What are the

14 conditions -- I usually have one of those lists with me but I

15 don't today.

16         Mr. Stewart, what other conditions?

17         **U.S. PRETRIAL SERVICES OFFICER STEWART:**  Your Honor,

18 I think you addressed all the conditions that we would have

19 recommended.  I would prefer a recommendation for conditions

20 that mean she get medical or psychiatric treatment just for

21 evaluation in that area.

22         **THE COURT:**  You know, I -- you've been through a

23 pretty traumatic event and it seems to me that might be

24 helpful.  So let's get you an evaluation mental-health-wise to

25 see -- I think there was an indication of possible depression.

1          **MS. SPEAKER:**  (indisc.)?

2          **THE COURT:**  That's okay.

3          **MS. SPEAKER:**   Okay.

4          **THE COURT:**  That's okay because I've got Mr. Stewart

5    here.

6          **MS. SPEAKER:**   Okay.

7          **THE COURT:**  So let's do that as well.  And then in

8    the meantime, your mom -- is that your mom out there now?

9          **THE DEFENDANT:**  Yes, your Honor.

10         **THE COURT:**  Would you mind coming forward, ma'am?

11         And you're Ms. Frances Silva?

12         **MS. FRANCES SILVA:**  Yes, ma'am.

13         **MR. FISHER:**  Frances Silva, yes.

14         **THE COURT:**  Okay.  This is really important now.  I'm

15   -- you have qualified as a third-party custodian, okay?  And

16   for now I need you not to touch your daughter.

17         **MS. FRANCES SILVA:**  I'm sorry, your Honor.

18         **THE COURT:**  And that's because she's still in

19   custody.

20         **MS. FRANCES SILVA:**  I'm sorry, your Honor.

21         **THE COURT:**  That's all right.  We're going to look at

22   placing her with you in Santa Rosa but I want to make sure that

23   you understand you have obligations to me.  And that would be

24   that if your daughter violates any of these conditions for

25   release, you have to go and tell Mr. Stewart.  Do you

1   understand that?

2           **MS. FRANCES SILVA:**  All right, your Honor.

3           **THE COURT:**  I mean, you may feel really badly for her

4   and everything else but it won't be me putting her in jail or

5   you putting her in jail if she violates.  You will be putting

6   yourself in jail and I want you to remember that before you go

7   and think about violating a condition.  It's up to you.

8           Let's see if we can't get this going -- get it

9   approved.  Now, I do think I may have placed a few people who

10  she may be acquainted with over at the halfway house.  If you

11  run into anybody at all that you recognize to say, "I can't

12  talk to you."  All right?  Do you understand that?

13          **THE DEFENDANT:**  Yes, your Honor.

14          **THE COURT:**  If I get a report that you do anything

15  more than say, "I cannot talk to you," you'll be in trouble

16  with me because I am imposing zero tolerance.  Okay.

17          All right.  Do you have any questions, Ms. Silva?

18          **MS. FRANCES SILVA:**  No, your Honor.  Thank you very

19  much, appreciate that.

20          **THE COURT:**  Okay.  Amanda, do you have any questions?

21          **THE DEFENDANT:**  No, your Honor.

22          **THE COURT:**  All right.  Counsel, I'll give you an

23  opportunity to consult with your office.  So I'll stay this

24  order for a day.

25          **MR. HOUGHTON:**  Thank you, your Honor.  I appreciate

25

1    that.

2             **THE COURT:**  All right.  Anything else, Mr. Fisher?

3             **MR. FISHER:**  No, your Honor.

4             **THE COURT:**  We'll be in recess.

5             **THE CLERK:**  All rise.

6        **(This proceeding ends at 4:26 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **April 9, 2020**

Signed                                              Dated


*TONI HUDSON, TRANSCRIBER*